IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 9, 2016 Session

**KIMBERLY MANGRUM v. STATE OF TENNESSEE**

**Appeal from the Circuit Court Dickson County**
**No. 22CC-2014-CR-130      Larry J. Wallace, Judge**

**No. M2016-00383-CCA-R3-PC – Filed October 11, 2016**

The Petitioner, Kimberly Mangrum, appeals the Dickson County Circuit Court's denial of her petition for post-conviction relief from her convictions for first degree felony murder, attempted first degree premeditated murder, aggravated burglary, and especially aggravated kidnapping and her effective life sentence. The Petitioner contends that (1) she received the ineffective assistance of counsel on appeal and (2) counsel's ineffective assistance deprived her of due process of law. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT H. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Rebecca Stevens, Stewart, Tennessee, for the Petitioner, Kimberly Mangrum.

Herbert H. Slatery III, Attorney General and Reporter; M. Scott Ridley, Assistant Attorney General; W. Ray Crouch, District Attorney General, and Carey Thompson, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

The Petitioner's convictions arise from the drowning death of LeeAnn Mangrum, the victim. At the time of the victim's death, the Petitioner was married to the victim's ex-husband, Terry Mangrum, Sr. This court summarized the facts of the case in the appeal of the Petitioner's convictions as follows:

> The victim . . . [and] Terry Mangrum, Sr. . . . had two children of their marriage, Terry Mangrum, II, and A.M. (who will be referred to by her initials in this opinion because of her age). The children had previously lived with the

victim but had been removed from her custody by the Department of Children's Services and placed in the home of Defendant and their father. Due to the similarity of their names, Terry Mangrum, Sr. will be referred to as "Mr. Mangrum," and Terry Mangrum, II as "Terry."

Terry, also charged with the murder of his mother, (he was transferred from juvenile court to be tried as an adult) was 17 years old at the time of Defendant's trial. He testified that Defendant had a history of being violent and making threats toward both the victim and himself. He had seen Defendant curse and call the victim names and threaten her with violence. Defendant also paddled Terry with a wooden board if he did not obey her, and on one occasion, Defendant burned him with her cigarette. Defendant had ordered him not to speak to his mother. He was afraid of Defendant. Terry testified that he was offered the opportunity to plead guilty to a reduced charge of second degree murder for his testimony that he acted under duress by Defendant.

On September 7, 2002, the victim met some friends at a local bar to watch a football game. She left the bar between 11:30 p.m. and midnight. That same night, she called her mother, Betty Wade, from a friend's cell phone between 9:00 and 9:30 p.m. and made arrangements to meet her at church the next morning. Ms. Wade testified that she received a phone call from the victim's cell phone at 5:20 a.m. the following morning, and an unfamiliar voice that was not her daughter's said, "Mama, please help me. I'm scared." Ms. Wade contacted the victim's neighbor, Agnes Sullivan. Ms. Sullivan testified that the victim's vehicle was not at home. The following afternoon, Ms. Sullivan went inside the victim's home, using a spare key that she had, and found the home in disarray. She testified the home looked "ransacked."

In the early morning hours of September 8, 2002, Defendant woke up Terry and told him to go with her. He and his sister, A.M., got into Defendant's car, and Defendant began driving around. She drove by the victim's trailer, but the victim was not there. As they were driving away, they passed the victim in her Jeep, and Defendant turned around and followed the victim home. Defendant grabbed a baseball bat from behind her seat and began beating the victim's vehicle with it. Defendant yelled at Terry and A.M. to get out of the car. The victim tried to drive away, and Defendant burst the passenger side window with the bat. Defendant then broke the driver side window and pulled the victim out of her vehicle by her hair. Defendant punched the victim in the face and beat her with the baseball bat until she was unconscious. She then found a piece of wood and ordered Terry to hit her with

it. He testified that he did not want to hit his mother with the wood, but Defendant "made [him] hit her." Defendant told A.M. to get some rope out of her car and told Terry to help tie up the victim. She threatened Terry that if he did not follow her orders he would end up in the "same situation." While the victim was still unconscious, Defendant and Terry tied the victim's hands behind her back and put her in the backseat of her Jeep. Defendant then told Terry to drive his mother's Jeep and follow her in her Mustang. They drove down a rocky, dirt road and parked beside a creek. Terry and Defendant pulled the victim out of the car and laid her beside the water. Defendant told A.M. to get Defendant's medications from her car. Defendant and Terry shoved pills down the victim's throat and pushed her into the water. Defendant threatened to kill Terry if he did not put his foot on the victim and hold her underwater to make sure she was dead. Defendant then drove the victim's Jeep into the water.

Defendant, Terry, and A.M. left in Defendant's Mustang. Defendant told Terry to throw his shirt, the rope, and a cell phone out of the window as they drove away. Defendant drove back to the victim's trailer because she had left the baseball bat there. On the way there, she told Terry and A.M. "over and over" to "keep their mouths shut [and] it would be okay and . . . all blow over and nobody [would] ever know about it." When they arrived at the victim's trailer, Defendant stated that they were going to go inside to see if the victim had any money. Defendant gave Terry a screwdriver from her car and told him to pry open the door, but he could not pry it open, so she told him to break the window with the screwdriver. Terry broke the window and lifted A.M. through the window in order to let Defendant inside the trailer. Once inside, Defendant broke things and knocked over things inside the victim's home. Defendant and A.M. filled four trash bags with the victim's clothes and jewelry and left the victim's residence.

The following day, Terry and A.M. washed Defendant's Mustang, and Defendant concocted a story for them to tell the authorities. Sometime later, Defendant learned of a search warrant to obtain Defendant's DNA, and Defendant took Terry and A.M. to live in North Carolina. After they returned to Tennessee one month later, the police obtained DNA samples from Defendant and Terry pursuant to a search warrant. Defendant became increasingly paranoid and "made" Terry write a statement admitting that he had killed his mother. Terry testified that Defendant stuck him in the side with a knife while he wrote the statement. On another occasion, Terry missed the school bus, and Defendant sat on him while cutting his neck with a coat hanger.

A fisherman found the victim's body and her partially submerged Jeep in Turnbull Creek on the afternoon of September 8, 2002. Police were called to investigate. The victim's injuries included multiple blunt force traumas to the head and contusions on the abdomen, torso, and buttocks. Her injuries were consistent with being hit with a baseball bat. She died from drowning. Defendant's DNA was found on a recently deposited cigarette butt found outside the victim's home. A drop of blood found on a window at the victim's home matched Terry's DNA, and his fingerprints and A.M.'s palm print matched latent prints taken from a broken piece of window pane. Latent prints were also taken from the victim's Jeep, but none of the prints were identified as belonging to either Defendant, the victim, or Terry. A.M. testified that Defendant made them wear gloves during the incident.

*State v. Kimberly Mangrum*, No. M2009-01810-CCA-R3-CD, 2011 WL 5387594, at *2-4 (Tenn. Crim. App. Nov. 9, 2011), *aff'd*, 403 S.W.3d 152 (Tenn. 2013).

This court affirmed the Petitioner's convictions. The Tennessee Supreme Court granted the Petitioner's application for permission to appeal relative to an issue regarding the grand jury proceedings and, ultimately, affirmed the Petitioner's convictions. *Mangrum*, 403 S.W.3d 152. The Petitioner filed a petition for post-conviction relief, asserting that she received the ineffective assistance of counsel and that her due process rights were violated.

At the post-conviction hearing, counsel testified that he had thirty years' experience in criminal law and that he represented the Petitioner at the trial and on appeal. Counsel said that he raised four issues in the brief: sufficiency of the evidence, whether the trial court erred by failing to quash A.M.'s grand jury subpoena, whether the court erred by not allowing the use of a 177-pound mannequin as a demonstrative exhibit, and whether the court erred by allowing Ronald Durham to testify about the Petitioner's relationship with her husband. Counsel agreed that the majority of the argument contained in the brief focused on the first two issues. When asked why he did not include argument for the latter two issues in the brief, counsel said that he did not find any case law addressing the issues and that he considered the issues to be less important.

Relative to the cigarette butt found in the victim's yard, counsel testified that DNA recovered from the cigarette matched the Petitioner's DNA. Counsel said that based upon objections at the trial, the trial court did not allow the Tennessee Bureau of Investigation forensic expert to testify about the age of the cigarette butt. Counsel acknowledged that substantial Tennessee case law existed about corroboration of accomplice testimony. Counsel did not believe he developed an issue in the appellate brief regarding corroboration in the Petitioner's case.

-4-

Counsel testified that during the time in which he wrote the appellate brief, he was defending eleven counts of murder for other clients, including a potential capital case involving a triple homicide. Counsel disagreed his case load contributed to his not developing some of the issues in the brief.

On cross-examination, counsel testified that he had been a public defender for more than sixteen years, that previously he had been an assistant district attorney for more than twelve years, and that he had been a private criminal defense attorney. Relative to the proposed demonstrative exhibit, counsel said that the defense team constructed a 177-pound mannequin from canvas, duct tape, and sand in order to rebut A.M.'s testimony that the Petitioner dragged the unconscious victim into the water. Counsel stated that they intended to ask the jury to attempt to pick up the mannequin during deliberations in order to demonstrate the difficulty of dragging an unconscious person the victim's size. Counsel said A.M.'s testimony reflected that the Petitioner and Terry carried the victim from a car to a creek, where the victim drowned, and that the Petitioner carried the victim's upper body, which was heavier than the victim's lower body. Counsel recalled that the State objected and that the trial court prohibited the defense from using the mannequin because it was not sufficiently similar to a human body. Counsel said he did not remember whether the court determined that using the mannequin would mislead the jury but that the jury saw the mannequin at the trial anyway. Counsel stated that Ronald Durham testified he had seen the Petitioner pick up a motorcycle. Counsel said that he objected to Mr. Durham's testimony because it was offered to rebut the idea that Mr. Mangrum, Terry's father and the Petitioner's husband, could have orchestrated the murder. Counsel said that he did not have a clear reason for his objection.

Counsel testified that the grand jury issue was one of the strongest issues aside from sufficiency of the evidence. Relative to sufficiency of the evidence, counsel said that he believed the jury should not have believed the accomplice testimony

> not because it was corroborated or uncorroborated, but just because it seemed to be rather fantastic that [A.M.] could have crawled through the window . . . when the photograph showed shards of glass sometimes going up 4 or 5 inches or more in the bottom of that window. I just felt like no one could have crawled through that window without getting cut.

Counsel stated that the broken window cut Terry and that the physical evidence inside the victim's trailer corroborated Terry's first statement about his arguing with the victim and killing her. Counsel agreed the evidence showed that at the Petitioner's request, Terry admitted to killing the victim and that after consulting with their attorneys, A.M. and Terry changed their stories. Counsel said that in his opinion, A.M. was subpoenaed to the grand jury in order to obtain additional inculpatory evidence. Counsel stated that he used physical

evidence to attack the witnesses' credibility and that he emphasized inconsistencies between the physical evidence and the testimony. Counsel said that his best defenses were credibility and "pointing the finger" at Terry.

Counsel testified that he did not recall whether the Tennessee Supreme Court ruled on the corroboration issue. Counsel agreed that the cigarette butt found outside the victim's trailer provided "at least some corroboration" of A.M.'s testimony but said that it also corroborated the defense theory that the Petitioner could have been at the trailer at any time before the murder because of the uncertain age of the cigarette. Counsel agreed that the presence of Terry's blood on the window corroborated both the State's theory about staging a burglary at the house after the murder and corroborated the defense theory that Terry killed the victim after an argument.

The post-conviction court denied relief. The court determined that counsel, who was experienced and had served as a public defender for sixteen years, made a strategic decision to concentrate in the appellate brief on the sufficiency of the evidence and the misuse of the grand jury process. The court found that although counsel did not cite to any authority supporting the issue of accomplice corroboration, the Tennessee Court of Criminal Appeals nevertheless fully considered the issue. The post-conviction court determined that the Petitioner failed to establish deficient performance or prejudice.

Relative to the proposed mannequin exhibit, the post-conviction court found that although counsel did not fully argue the issue in the appellate brief and did not cite to any authority supporting the issue, counsel's decision not to argue the issue was not unreasonable given the circumstances of the case. The court determined that counsel's performance was not deficient using the factors set out in *Carpenter v. State*, 126 S.W.3d 879, 888 (Tenn. 2004).

The post-conviction court found that the issue should have been argued with citation to authority but that no authority existed to support the issue. The court found that the other issues, sufficiency of the evidence and the grand jury proceedings, were stronger issues than the omitted issue. The court found that counsel sought to introduce the demonstrative exhibit at the trial but that the trial court excluded it. The post-conviction court noted that the trial court's decision was entitled to deference and would have been reviewed for an abuse of discretion. The post-conviction court found that counsel testified about his trial strategy, that counsel sought to have the jury see the demonstrative exhibit in spite of counsel's belief that the exhibit would not be permitted, and that counsel felt the strategy had succeeded. The court found that counsel was a "very competent and experienced criminal defense attorney," that no evidence was presented relative to whether the Petitioner and counsel reviewed the appellate issues, and that counsel testified at the post-conviction hearing relative to the facts and issues on appeal. The court found that the admissibility of the mannequin was not

reviewed and that because counsel believed other issues were more likely to succeed on appeal, the decision to spend less time arguing this issue was reasonable.

Relative to Mr. Durham's testimony about the Petitioner's relationship with her husband, the post-conviction court found that although the issue was waived for failure to argue the issue and to cite any authority supporting the argument, the strategy was reasonable given the circumstances of the case. The court found that counsel was not deficient.

The post-conviction court found that although the issue of Mr. Durham's testimony should have been argued with citation to authority, no authority existed to support the issue. The court found that the other issues, sufficiency of the evidence and the grand jury process, were stronger issues. The court found that counsel objected to Mr. Durham's testimony at the trial but that the trial court overruled the objection because it found the testimony was relevant to proving the Defendant's control over the family. The post-conviction court noted that the trial court's decision was entitled to deference and would have been reviewed for an abuse of discretion. The post-conviction court found that appellate counsel testified about his trial strategy and that counsel objected to the evidence but that appellate counsel was unable to find legal authority to support his position. The court found that no evidence was presented relative to whether the Petitioner and counsel reviewed the issues, and that counsel testified at the post-conviction hearing relative to the facts and issues on appeal. The court found that the issue of Mr. Durham's testimony was not reviewed and that because counsel believed other issues had a better chance of success on appeal, the decision to spend less time arguing this issue was reasonable.

The post-conviction court found that appellate counsel made a strategic decision to focus on the issues with the "best shot of winning" and that the strategy was "well within the range of reasonable professional assistance." The court noted that the Petitioner presented "minimal deficient" performance evidence. The court found that in the appellate brief, counsel presented all the issues that needed to be argued, that counsel spent most of his time arguing the first two issues, that counsel stated the latter two issues had merit, and that counsel found no persuasive case law on the latter two issues.

Relative to sufficient corroboration of the accomplice testimony, the post-conviction court found that the issue was addressed by the Tennessee Court of Criminal Appeals and was "essentially addressed" in counsel's sufficiency of the evidence argument. The court denied post-conviction relief, and this appeal followed.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364,

368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). The standard is the same, whether reviewing the performance of trial or appellate counsel. *Carpenter*, 126 S.W.3d at 886.

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

# I

## Ineffective Assistance of Counsel

The Petitioner contends that she received the ineffective assistance of counsel when (1) counsel did not seek appellate review of whether sufficient corroboration was present relative to the accomplices' testimony, (2) counsel did not cite to the record or cite to legal authority and did not argue the admissibility of the demonstrative exhibit and Mr. Durham's testimony, and (3) counsel did not raise as an issue the trial court's failure to admit an exhibit consisting of cigarette butts of varying ages into evidence. The State responds that this court fully reviewed the sufficiency of the accomplice testimony in the appeal of the Petitioner's convictions and that the Petitioner did not prove deficient performance or prejudice.

As a preliminary matter, we note post-conviction counsel's discussion of and repeated references to the portrayal of the Petitioner in a "true crime docudrama." The record before

the court contains no evidence of the existence of any television program relevant to the question of whether the Petitioner received the ineffective assistance of counsel.

When reviewing ineffective assistance of appellate counsel claims, our supreme court has said:

> Appellate counsel are not constitutionally required to raise every conceivable issue on appeal. *King v. State*, 989 S.W.2d 319, 334 (Tenn. 1999); *Campbell v. State*, 904 S.W.2d 594, 596-97 (Tenn. 1995). Indeed, "experienced advocates have long 'emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues.'" *Cooper v. State*, 849 S.W.2d 744, 747 (Tenn. 1993) (quoting *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983)); *see also Smith v. Robbins*, 528 U.S. 259, 288, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000). The determination of which issues to raise on appeal is generally within appellate counsel's sound discretion. *Jones*, 463 U.S. at 751, 103 S. Ct. 3308; *King*, 989 S.W.2d at 334; *Cooper*, 849 S.W.2d at 747. Therefore, appellate counsel's professional judgment with regard to which issues will best serve the appellant on appeal should be given considerable deference. *See Campbell*, 904 S.W.2d at 597; *see also Strickland*, 466 U.S. at 689, 104 S. Ct. 2052.

*Carpenter*, 126 S.W.3d at 887.

# A

## Corroboration of Accomplice Testimony

The Petitioner contends that she received the ineffective assistance of counsel because counsel failed to raise an appellate issue regarding the existence of corroboration of accomplice testimony. The Petitioner argues that she would have prevailed on this issue because the age of the cigarette butt found outside the victim's trailer was unknown and because the testimony of A.M. and Terry changed throughout the investigation. The State responds that this court fully considered the issue in the previous appeal.

The post-conviction court found that although counsel only briefly addressed the issue in the context of sufficiency of the evidence, this court fully considered accomplice corroboration in the appeal of the Petitioner's convictions. We agree.

This court dedicated a substantial portion of its opinion to an in-depth discussion of the evidence corroborating the accomplice testimony and concluded that sufficient

corroboration existed. *Kimberly Mangrum*, 2011 WL 5387594, at \*5-8. This court stated that the combination of the cigarette butt and the Petitioner's statements to the police sufficiently corroborated the testimony. The Petitioner failed to prove that she was prejudiced by any deficiency and is not entitled to relief on this basis.

We note that the Petitioner also contends that, due to counsel's ineffective assistance, her case "was not subjected to a true adversarial appellate process and [did not have] the dispassionate scrutiny of the appellate court." The Petitioner argues that this court did not have the "benefit of an adequate record" as a result of counsel's failure to brief this issue. She argues that this court "was not provided with many facts favorable to the Defendant's case" and that "the court was not able to take [the favorable facts] into account in its review." Nowhere in the post-conviction petition is it alleged that the appellate record lacked appropriate transcripts or other materials necessary for full consideration of the issues raised in the appeal of the Petitioner's convictions.

Moreover, the Petitioner argues that counsel's failure to comply with the Tennessee Rules of Appellate Procedure in drafting the appellate brief resulted in the Petitioner's being deprived of the benefit of the appellate process in violation of her Fifth and Fourteenth Amendment due process rights, that her case falls into a category of cases in which prejudice should be presumed, and that she should receive a delayed appeal. The State has failed to address this issue.

The United States Supreme Court has identified narrow categories of cases in which prejudice under *Strickland* is presumed. *United States v. Cronic*, 466 U.S. 648, 659 (1984). In relevant part, prejudice is presumed when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.*; *see Bell v. Cone*, 535 U.S. 685, 697 (2002) (clarifying that "the attorney's failure must be complete" and not merely "at specific points" in the proceedings). In *Wallace v. State*, 121 S.W.3d 652, 657-58 (Tenn. 2003), our supreme court held that prejudice could be presumed when counsel's failure to file a motion for a new trial and to withdraw from the representation resulted in "abandonment of his client at . . . a critical stage of the proceedings" and "the complete failure to subject the State to the adversarial appellate process." *See Cronic*, 466 U.S. at 659.

In support of her argument that her case meets these criteria, the Petitioner relies upon *State v. Quinn L. Hamilton*, No. M2005-02748-CCA-R3-CD, 2007 WL 957187 (Tenn. Crim. App. Mar. 29, 2007), *no perm. app. filed*, and *Johnny Young v. State*, No. M2013-02209-CCA-R3-PC, 2014 WL 5041796 (Tenn. Crim. App. Oct. 9, 2014), *no perm. app. filed*. In *Quinn L. Hamilton*, appellate counsel failed to file a notice of appeal without the petitioner's knowledge. The petitioner's post-conviction petition was filed after the one-year statute of limitations expired. 2007 WL 957187, at \*2. This court determined that due process supported the post-conviction court's tolling the statute of limitations and granting a delayed

appeal. *Id.* at \*3-4. In *Johnny Young*, trial counsel failed to file a motion for a new trial and filed an untimely notice of appeal. 2014 WL 5041796, at \*1. The petitioner sought post-conviction relief. *Id.* at \*2 This court concluded that counsel had rendered ineffective assistance and as a result, the petitioner should have been permitted to file a delayed motion for a new trial. *Id.* at \*5. This court noted that although counsel had filed an untimely appeal raising a sentencing issue, counsel's deficiency resulted in a "complete failure to subject the State's case to appellate scrutiny" and therefore, prejudice could be presumed. *Id.* at \*5.

We conclude the Petitioner's reliance on these cases is misplaced. In *Quinn L. Hamilton*, the petitioner did not receive an appeal due to counsel's failure to file a notice of appeal. In *Johnny Young*, counsel did not file a motion for a new trial, and counsel filed an untimely appeal raising only a sentencing issue. In contrast, in the present case, counsel timely filed a motion for a new trial and a notice to appeal, and the Petitioner received an appeal, including full consideration of the sufficiency of accomplice testimony and of the grand jury issue. Counsel did not "entirely" fail to subject the State to the appellate process. *See Cone*, 535 U.S. at 697. The Petitioner is not entitled to a presumption of prejudice, and, as we have concluded above, she failed to establish that prejudice occurred. The Petitioner is not entitled to relief on this basis.

## B & C

### Proposed Demonstrative Exhibit & Mr. Durham's testimony

The Petitioner contends that counsel's decision to include issues on appeal regarding the proposed demonstrative mannequin exhibit and Mr. Durham's testimony without citation to authority or articulating a complete argument could not have been the result of a reasonable strategy and was deficient performance. The State responds that the post-conviction court correctly determined counsel was not deficient because the issues were minor and had little likelihood of success on appeal.

Appellate counsel testified that he researched the two issues but did not find any supporting case law on point. The post-conviction court found that although the issues could have been briefed more thoroughly, counsel made a strategic choice to focus on the sufficiency of the evidence and the grand jury proceedings, the two issues most likely to succeed. As a result, the court determined that counsel's performance was not deficient.

An appellate brief "must comport with the mandates of the Tennessee Rules of Appellate Procedure." *State v. Draper*, 800 S.W.2d 489, 498 (Tenn. Crim. App. 1990). Tennessee Rule of Appellate Procedure 27(a)(7) states that a brief must contain citations to the relevant authorities and the appellate record. Relative to both the demonstrative exhibit and Mr. Durham's testimony, counsel did not cite to any legal authority, and he only cited to

the record relative to Mr. Durham's testimony.  We note that if counsel intended to argue in favor of a change in the law, counsel could have stated for this court's benefit that he raised issues of first impression, followed by a statement of current caselaw and counsel's argument for change.[1]  In any event, the Petitioner has failed to prove she was prejudiced by counsel's briefing.

We disagree with the Petitioner's implication that an issue not briefed in compliance with Rule 27(a)(7) constitutes a more egregious error than failing to raise the issue at all and that prejudice should be presumed whenever counsel fails to abide by the Rules of Appellate Procedure.  An issue not briefed in compliance with Rule 27(a)(7) is waived, and this court has concluded that the "failure of counsel to raise a particular issue does not *per se* deprive a defendant of his constitutional right to the effective assistance of counsel."  *Draper*, 800 S.W.2d at 498.  The Petitioner is not entitled to a presumption of prejudice.

The Petitioner did not present evidence at the post-conviction hearing to suggest that the issues would have been likely to succeed had they been presented differently in the brief, and no authority reflects the trial court's rulings were erroneous. The Petitioner has not proven that she was prejudiced, and she is not entitled to relief on this basis.

**D**

**Cigarette Butts Exhibit**

The Petitioner contends that counsel should have raised an issue on appeal relative to whether the trial court erred by excluding a proposed exhibit consisting of cigarette butts. The State has failed to address this issue in its brief.  The Petitioner did not raise this issue in the post-conviction petition.  No proof was presented at the evidentiary hearing regarding the exhibit, and the transcript reflects the exhibit was not discussed at the hearing.  The Petitioner may not raise this issue for the first time on appeal, and we consider it waived. *See* T.R.A.P. 36(a); T.C.A. § 40-30-106(g) (stating that a ground for relief is waived if the petitioner failed to present it "before a court of competent jurisdiction in which the ground could have been presented.")

In consideration of the foregoing and the record as a whole, we affirm the judgment of the post-conviction court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE

---

[1] We note that counsel utilized this method in his argument of the grand jury issue.